## The Illinois Trust and Savings Bank of Chicago
### v.
### Herman Felsenthal et al.

*Money Had and Received—Transfer of Check by Equitable Owner.*

An action for money had and received, brought by one bank against another, does not lie to recover the amount paid on a check drawn against the plaintiff and transferred to the defendant by the equitable owner after indorsing the name of the payee.

[Opinion filed May 31, 1888.]

Appeal from the Superior Court of Cook County; the Hon. Elliott Anthony, Judge, presiding.

Mr. James H. Miller, for appellant.

A forged indorsement does not pass title to commercial paper negotiable. Sec. 4, Chap. 98, Starr & C. Ill. Stat.; Graves v. American Exchange Bank, 17 N. Y. 208.

It has been held that a fraudulent indorsement of a fictitious payee's name will constitute forgery. Rex v. Taft, Leach Cro. L. 172; Tattock v. Harris, 3 T. R. 174; Vene v. Lewis, 3 T. R. 182; Minet v. Gibson, 3 T. R. 482.

But these payees were not fictitious as to the drawer or acceptor, for the reason that the checks were drawn to real persons, known to exist at the time and present to the mind of the drawer when he drew the checks. Kohn v. Watkins, 26 Kan. 690.

Again, we assert without fear of successful contradiction, that under the rule laid down in Milliard v. National Bank, 3 McArthur, 154, Seventh National Bank v. Cook, 73 Pa. St. 483, Johnson v. First National Bank of Hoboken, 6 Hun, 124, appellees were bound to ascertain that Hertel, on presentation of the checks, was entitled to receive payment, and for not so doing, they are under the penalty of refunding the money so received, or so much as will in conscience and equity make good to appellants the loss they sustained.

Mr. Eli B. Felsenthal, for appellees.

Plaintiff had the undoubted right to elect to treat the indorsements on these checks as genuine, and in the absence of the fraud which was perpetrated upon it, would have suffered no loss, even if the indorsements had not been made by the intended payees. It would have been a case of *damnum absque injuria*. When Prussing was sent for by Mr. Felsenthal, and informed of Hertel's fraud, he must be held to have known that the affidavit that Hertel had made was false, and

that the checks which he had given to Hertel, and which plaintiff had already paid, could not have gone to satisfy any indebtedness of Hertel's to mechanics upon a building which never had been erected. Yet the plaintiff made no claim upon the defendants, but regarded the indorsements as sufficient, and entered up judgment upon the note which Hertel had given.

Subsequently it took a deed from Hertel for the lot upon which it held a trust deed, for which it credited Hertel $900, and we contend they are now estopped from setting up any claim by reason of the indorsement on said checks.

Upon question of estoppel, see Hefner v. Vandolah, 62 Ill. 483; Same v. Dawson, 63 Ill. 403; Litzelman v. Howell, 2 Ill. App. 588.

BAILEY, J.   This was an action of assumpsit, brought by the Illinois Trust and Savings Bank of Chicago against Herman Felsenthal and others, for money had and received. At the trial before the court, a jury being waived, the issues were found for the defendants and judgment was entered in their favor for costs.

The money sued for was paid by the plaintiff to the defendants upon two checks, dated October 6, 1885, drawn by Eugene E. Prussing on the plaintiff, one being for $400, payable to the order of Charles Breyer, and the other for $1,025, payable to the order of H. C. Zimmerman. Both of these checks were paid to the defendants through the Chicago clearing house, October 7, 1885, and at the time of such payment they bore what purported to be the indorsements of the payees therein named. It is now claimed, and the evidence tends to show, that said indorsements were not the genuine indorsements of said payees, but were written on the checks by or by the procurement of one Charles Hertel.

The facts in relation to said checks, as disclosed by the record, are substantially as follows: The plaintiff and defendants are bankers doing business in the city of Chicago, and are engaged in loaning money on real estate securities. Prussing,

the drawer of the checks, is an attorney-at-law and at the date of said checks was acting for the plaintiff in negotiating and placing its loans. A short time prior to that date, Charles Hertel applied to Prussing for a loan of $3,000, and offered as security a lot which he described as No. 177 Fremont Street, Chicago, and represented that there was a three-story building on said lot which he had just erected. Prussing referred Hertel's application for a loan to the plaintiff, and thereupon the plaintiff's president went upon the premises to examine the sufficiency of the security offered and reported to Prussing that it was sufficient. Prussing examined the title and found it good, and then prepared a note for $3,000 and a deed of trust on said lot to secure the same, and on the 26th day of September, 1885, said papers were executed by Hertel, and on the same day the deed of trust was filed for record. On the 6th day of October, 1885, Prussing notified the plaintiff's cashier that he was ready to close the loan, and thereupon the plaintiff placed to Prussing's credit the sum of $3,000 which was to be paid over to Hertel.

Before paying over the money, Prussing, as a matter of precaution, required Hertel to make an affidavit in relation to the building on said lot and the claims and liens of mechanics and material men thereon, in which Hertel stated that he was the owner of said lot and building; that he did the mason work therein himself and had paid for the labor and material pertaining to such work in full; that he let the carpenter work, painting, roofing and plastering to H. C. Zimmerman for $2,500 and had paid him $1,475 and that the sum of $1,025 remained due said Zimmerman; that he let the plumbing and gas-fitting to Charles Breyer for $400, all of which was still owing to him; that these two sums were all that was owing on account of said building, and that he had received no notice of any lien on the premises from any source whatever.

After taking this affidavit, Prussing, at the suggestion of Hertel, drew his checks for the amounts of said claims, payable respectively, to Zimmerman and Breyer, and expressed on the face of the checks that they were in full of all claims on ac-

count of said building and delivered them to Hertel to be by him delivered to the payees therein named. Hertel, instead of delivering the checks to Zimmerman and Breyer, caused the names of said payees to be indorsed and then negotiated the checks to the defendants, who immediately collected them of the plaintiff through the clearing house, as already stated.

Shortly after the checks were paid it was discovered that the lot known as No. 177 Fremont Street had no building whatever on it, but that the building examined by the plaintiff's president was, in fact, standing on another lot. It follows that neither Zimmerman nor Breyer had any claim or lien on the lot mortgaged by Hertel to the plaintiff, or to the moneys represented by said checks. Neither of them put any labor or materials into any building on the lot mortgaged, or, so far as appears, into any building on any lot owned by Hertel.

It is plain from the foregoing facts, that, as between Hertel on the one hand, and Zimmerman and Breyer on the other, Hertel was the equitable owner of the moneys represented by said checks, and therefore the equitable owner of the checks themselves. They were given for money which he had borrowed from the plaintiff and for which he had given the plaintiff his note and deed of trust. He was owing Zimmerman and Breyer nothing, and they, therefore, had and could have no claim on said money or any portion of it. If Hertel had retained the checks in his own possession, they would have been powerless to compel him to deliver the same over to them. Nor can they have any claim upon the plaintiff based upon the checks, or upon the payment of them by the plaintiff without their indorsement.

Hertel, by selling and delivering the checks to the defendants, transferred to them his equitable title. We may entirely disregard the indorsement of the names of the payees, and treat such indorsements as mere forgeries. The rights of the defendants in that case are the same as though Hertel had sold them the checks without indorsement, which would have amounted to an equitable assignment. The defendants' equitable title to the checks gave them an equitable right to the moneys payable thereon, a right which they could doubtless

have enforced by a proper proceeding. The plaintiff then having the defendants' money, which the latter were equitably entitled to receive, we see no ground upon which said money can be recovered back. The action for money had and received is an equitable action, and lies where a defendant has received money which *ex æquo et bono* he ought not to retain. In this case, however, the money in controversy belongs *ex æquo et bono* to the defendants, and it is, therefore, plain that the plaintiff's action therefor should not be maintained.

The judgment of the court is, in our opinion, the proper result to be drawn from all the evidence, and it will therefore be affirmed.

*Judgment affirmed.*